# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **CLAIRE B. GOWING** | ) | **CASE No.** |
| 9265 Sherman Road | ) | |
| Chesterland, Ohio 44026, | ) | |
| | ) | |
| Plaintiff, | ) | **JUDGE:** |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT** |
| **BEDFORD CITY SCHOOL DISTRICT** | ) | (Jury Demand) |
| **BOARD OF EDUCATION,** | ) | |
| 3 Hemisphere Way | ) | |
| Bedford, Ohio 44146 | ) | |
| | ) | |
| | ) | |
| **DR. CASSANDRA J. JOHNSON,** | ) | |
| Superintendent of Bedford City School | ) | |
| District (Individual and Official Capacity), | ) | |
| | ) | |
| **THOMAS EVANS,** | ) | |
| Interim Superintendent of Bedford City | ) | |
| School District (Individual and Official | ) | |
| Capacity), | ) | |
| | ) | |
| **ANGELIC M. CARTER,** | ) | |
| Board Member, Bedford City School | ) | |
| District) Board of Education (Individual | ) | |
| and Official Capacity), | ) | |
| | ) | |
| **ANTHONY A. AKINS,** | ) | |
| Board Member, Bedford City School | ) | |
| District Board of Education (Individual | ) | |
| and Official Capacity), | ) | |
| | ) | |
| **EVA BOYINGTON,** | ) | |
| Board Member, Bedford City School | ) | |
| District Board of Education (Individual | ) | |
| and Official Capacity), | ) | |
| | ) | |

**CHRIS CALLENDER,**                    )
Board Member, Bedford City School       )
District Board of Education (Individual )
and Official Capacity),                 )
                                        )
**MONTEZ MORTON,**                      )
Board Member, Bedford City School       )
District Board of Education (Individual )
and Official Capacity),                 )
                                        )
               Defendants.

## PRELIMINARY STATEMENT

This action arises from a sustained campaign of constitutional violation, defamation, and retaliation directed at Plaintiff Claire B. Gowing, a twenty-year veteran public educator and Assistant Principal at Bedford High School, because she refused to manufacture false allegations of alcohol abuse against her direct supervisor at the demand of the Superintendent of the Bedford City School District.

In the first week of October 2025, Defendant Dr. Cassandra J. Johnson, then and now the Superintendent of the Bedford City School District, summoned Plaintiff to a meeting in the presence of the District's Human Resources Director. There, Defendant Johnson demanded that Plaintiff state, falsely, that her direct supervisor, Principal Khalisha A. Lewis, was "drinking on the job." Plaintiff refused. Defendant Johnson, visibly angry, told Plaintiff, "I see who you are now," that Plaintiff had "changed in the six years" she had worked for the District "and not for the better," and, as Plaintiff was leaving the room, "I'll deal with you later."

Five weeks later, Defendant Johnson made good on that threat. On October 31, 2025, Defendant Johnson signed a letter, copied to the President of the Board and another Board member, placing Plaintiff on paid administrative leave for unspecified allegations of intoxication on duty, improper handling of confiscated student vapes, and unspecified discrepancies in student discipline. The very allegation Defendant Johnson had tried to manufacture against Principal Lewis was now turned against the administrator who had refused to manufacture it.

Plaintiff was given no written notice of any specific allegation before being placed on leave. She was given no opportunity to respond. She was given no Loudermill hearing. She was kept on administrative leave for approximately one hundred and eighty (180) days. During that time, the District conducted an investigation involving interviews of more than twenty individuals, communicated false and defamatory allegations to a wide circle of community members, and produced no finding of misconduct. On April 23, 2026, the District, through Interim Superintendent Thomas Evans, confirmed in writing that "insufficient evidence exists to support a finding of misconduct and no discipline will be issued." Approximately three months later, on August 1, 2026, the District executed a multi-year contract renewal extending Plaintiff's employment through July 31, 2028—confirming the absence of any good-faith basis for the conduct that preceded the clearance.

Plaintiff's experience is not isolated. Within the same six-month period, September 2025 through March 2026, Defendant Johnson placed three senior Bedford administrators on administrative leave using the identical constitutional template: removal without pre-deprivation process; refusal to disclose specific allegations; sustained leave without procedural foundation; and ultimate inability to substantiate the asserted bases. Principal Khalisha A. Lewis was placed on leave on September 29, 2025, five weeks before Plaintiff. Assistant Principal and Career and Technical Education (CTE) Coordinator Reginald C. Walker was placed on leave on October 3, 2025. The District's Human Resources Director, Dr. JaTina N. Threat, was placed on leave on March 6, 2026, after voicing concerns about Defendant Johnson's practice of removing administrators without procedural foundation. Each of those three individuals is independently represented by counsel and is pursuing pre-litigation civil rights claims arising from materially similar conduct. The pattern is documented across independent accounts; it is not a pattern constructed by counsel.

The Board of Education was on notice of this pattern throughout. The historical Board, Defendants Carter, Macklin, Akins, and Boyington, received Plaintiff's December 10, 2025, written notice of the unconstitutional retaliation and the procedural deficiencies of her leave. Defendant Carter, then Board President, ratified the procedural posture on the Board's behalf on December 17, 2025, in a written response that admitted Plaintiff had not been given the specifics of any allegation and that she would receive an opportunity to respond only "should the discipline process progress," that is, after rather than before the deprivation. The current Board, which includes new Members

Callender and Morton in addition to the holdover Members named above, continued the violation by failing to provide post-clearance remediation: no name-clearing hearing, no public retraction, no affirmative correction of the personnel file.

Plaintiff brings this action under 42 U.S.C. § 1983 and Ohio law for damages, declaratory relief, and prospective injunctive relief. Plaintiff demands a trial by jury.

## I. JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) over Plaintiff's federal claims arising under 42 U.S.C. § 1983, the First Amendment, the Fourteenth Amendment, and the Stored Communications Act, 18 U.S.C. § 2701 et seq. This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because all Defendants reside or are located in this judicial district, the Bedford City School District operates within this district, and all events giving rise to this action occurred within the Northern District of Ohio, Eastern Division.

## II. PARTIES

### A. Plaintiff

3. Plaintiff Claire B. Gowing is a resident of Chesterland, Ohio. At all times relevant to this Complaint, Plaintiff was employed by the Bedford City School District as Assistant Principal of Bedford High School pursuant to a then-operative multi-year certificated administrative contract. Plaintiff is a licensed Ohio educator with more than twenty (20) years of experience in public education and constitutionally protected property and liberty interests in her continued employment and her professional reputation.

### B. Defendants

4. *Defendant Bedford City School District* (hereinafter "the District" or "BCSD") is a public school district organized and operating under the laws of the State of Ohio, with its principal offices located at 3 Hemisphere Way, Bedford, Ohio 44146. The District is a

political subdivision of the State of Ohio and a person subject to suit under 42 U.S.C. § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

5. *Defendant Dr. Cassandra J. Johnson* is and at all times relevant to this Complaint has been the Superintendent of the Bedford City School District. She is sued in both her individual and official capacities. At all relevant times, she acted under color of state law as the District's final policymaking authority on personnel matters. Her personal authorization of Plaintiff's October 31, 2025, placement on administrative leave, her personal direction of the coercive October 2025 meeting at which she demanded Plaintiff make false statements against a fellow administrator, and her personal authorship of the threats culminating in "I'll deal with you later" render qualified immunity unavailable. She is subject to punitive damages under *Smith v. Wade*, 461 U.S. 30 (1983).

6. *Defendant Thomas Evans* is and at all times relevant to the post-clearance allegations herein has been the Interim Superintendent of the Bedford City School District. He is sued in both his individual and official capacities. Defendant Evans signed the April 23, 2026, letter clearing Plaintiff of misconduct, and at all times since has been responsible for the District's post-clearance personnel functions, including the failure to provide Plaintiff a name-clearing hearing, the failure to issue an affirmative public correction, and the failure to remediate Plaintiff's personnel file. At all relevant times, Defendant Evans acted under color of state law.

7. *Defendant Angelic M. Carter* is and at all times relevant to this Complaint was a Member of the Bedford City School District Board of Education. At the time of Plaintiff's December 10, 2025, notice and the December 17, 2025, ratification email, Defendant Carter was the President of the Board. She is sued in both her individual and official capacities. At all relevant times, she acted under color of state law.

8. *Defendant Sharyn Macklin* is and at all times relevant to this Complaint was a Member of the Bedford City School District Board of Education and a designated recipient of the October 31, 2025, leave letter. She is sued in both her individual and official capacities. At all relevant times, she acted under color of state law.

9. *Defendant Anthony A. Akins* is and at all times relevant to this Complaint was a Member of the Bedford City School District Board of Education. Defendant Akins is presently the President of the Board, having assumed that role after the events of October–December 2025. He is sued in both his individual and official capacities. At all relevant times, he acted under color of state law.

10. *Defendant Eva Boyington* is and at all times relevant to this Complaint was a Member of the Bedford City School District Board of Education. She is sued in both her individual and official capacities. At all relevant times, she acted under color of state law.

11. *Defendants Chris Callender and Montez Morton* are Members of the Bedford City School District Board of Education who assumed their seats after the events of October–December 2025. Defendants Callender and Morton are named in their individual and official capacities for their continuing-violation conduct: their post-seating ratification of the District's ongoing constitutional injuries to Plaintiff, including failure to provide a name-clearing hearing, failure to issue an affirmative public correction, and failure to remediate Plaintiff's personnel file following the April 23, 2026, clearance. At all relevant times post-seating, Defendants Callender and Morton acted under color of state law.

12. Defendants Carter, Macklin, Akins, Boyington, Callender, and Morton are referred to collectively as "the Board Defendants." Each Board Member who had knowledge of the pattern of constitutional violations alleged herein and failed to take corrective action bears individual § 1983 liability for deliberate indifference constituting tacit authorization.

### III.  FACTUAL BACKGROUND

**A.  Plaintiff's Employment and Service Record**

13. Plaintiff has been employed by the Bedford City School District for approximately five (5) years and ten (10) months as Assistant Principal at Bedford High School. Plaintiff has more than twenty (20) years of experience in public education and previously served as an administrator in two other Ohio school districts.

14. Plaintiff is responsible for student discipline and academic affairs for students whose last names begin with A through F. She is a licensed Ohio educator. At all relevant times during

the deprivation alleged herein, Plaintiff has been employed under a then-operative multi-year certified administrative contract with the District. That contract, together with Ohio Revised Code § 3319.02, confers upon Plaintiff a constitutionally protected property interest in continued employment. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985); *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

15.     Plaintiff has no prior disciplinary history with the District. Every formal performance evaluation Plaintiff has received has been positive. Plaintiff's evaluations have consistently been performed either by her direct supervisor, Principal Khalisha A. Lewis, or by prior District administrators.

16.     On August 1, 2026, after the April 23, 2026, clearance and after Plaintiff's administrative leave had ended, the District executed a multi-year certified administrative contract with Plaintiff for the period August 1, 2026, through July 31, 2028. The District's decision to execute a multi-year renewal of Plaintiff's employment immediately following the clearance is materially inconsistent with any legitimate, good-faith concern about Plaintiff's performance or fitness for her position, and confirms the absence of any merits foundation for the leave, the investigation, and the allegations communicated to more than twenty third parties during the preceding six months.

**B.  The October 2025 Coercion – Plaintiff's Protected Refusal**

17.     In or about the first week of October 2025, Defendant Johnson summoned Plaintiff to a meeting that Plaintiff understood would concern student discipline. The District's Human Resources Director, Dr. JaTina N. Threat, was also present.

18.     The actual subject of the meeting was Principal Khalisha A. Lewis, Plaintiff's direct supervisor. Defendant Johnson pressured Plaintiff to make affirmative statements that Principal Lewis "has a drinking problem" and that Principal Lewis was drinking before school events and during the school day.

19.     Plaintiff refused. Plaintiff would not corroborate the alleged misconduct. Plaintiff's refusal was a refusal to engage in compelled false speech against a fellow public employee, speech

that, had Plaintiff made it as Defendant Johnson demanded, would have caused the very kind of public harm to Principal Lewis that the District subsequently caused to Plaintiff.

20. Defendant Johnson became visibly angry. During and at the conclusion of the meeting, in the presence of Dr. Threat, Defendant Johnson stated to Plaintiff, among other things:

(a) "I see who you are now," made multiple times in response to Plaintiff's refusal to confirm the false allegations against Principal Lewis;

(b) That Plaintiff had "changed in the six years" she had worked for the District "and not for the better"; and

(c) As Plaintiff was walking out of the conference room: "I'll deal with you later."

21. Dr. Threat was present in the room while Defendant Johnson made these statements. The District's Human Resources function therefore had direct, first-hand, contemporaneous knowledge that Defendant Johnson was attempting to coerce false statements from one administrator against another.

**C.  The Pattern: The Lewis Removal and the Threat Retaliation**

22. Approximately one month before Plaintiff was placed on administrative leave, on September 29, 2025, Principal Khalisha A. Lewis was placed on administrative leave by Defendant Johnson. Principal Lewis was placed on leave using the same constitutional template later applied to Plaintiff: no pre-deprivation process; no disclosure of specific allegations; sustained leave without resolution.

23. On October 3, 2025, four days after Principal Lewis was placed on leave, and within the same general period as the October 2025 coercion meeting, Reginald C. Walker, Career and Technical Education Coordinator at Bedford High School, was likewise placed on administrative leave by Defendant Johnson using the same template.

24. On information and belief, after Dr. Threat voiced concerns about Defendant Johnson's practice of placing administrators on administrative leave without procedural foundation, Dr. Threat herself was placed on administrative leave on March 6, 2026, while attending a professional conference. The placement of the District's Human Resources Director on administrative leave, after she objected to the very pattern this Complaint addresses,

constitutes direct evidence of a custom and practice of retaliation against any administrator who refused to participate in, or who voiced concerns about, Defendant Johnson's preferred personnel narratives.

25. The Lewis, Walker, and Threat matters are each independently represented by counsel and are subject to pre-litigation civil rights claims arising from materially similar conduct. The pattern is documented across independent accounts, without coordination, and is established on the District's own records and institutional history.

### D.  Plaintiff's Removal Without Pre-Deprivation Process

26. On October 31, 2025, exactly as Defendant Johnson had warned ("I'll deal with you later"), Defendant Johnson signed and caused to be delivered to Plaintiff a letter placing Plaintiff on paid administrative leave "effective immediately."

27. The October 31, 2025, leave letter stated that Plaintiff was being placed on leave pending investigation of allegations of:

    (a) being under the influence of drugs or alcohol on school grounds and/or at school functions;

    (b) inappropriate handling of student discipline investigations, including improper handling of evidence; and

    (c) improper or disparate handling of student disciplinary absence protocols.

28. The leave letter was copied to Taylor Friedrich, Treasurer; Angelic Carter, then Board President; and Sharyn Macklin, Board Member. The Board's officers were thereby on contemporaneous notice, on the very day of deprivation, of the adverse action taken against Plaintiff.

29. The leave letter prohibited Plaintiff from being on District property; from contacting District students, parents, or staff; and from conducting any business on behalf of the District. Plaintiff was required to surrender her keys, identification, and electronic-access fob to Defendant Johnson the same day.

30. Before being placed on administrative leave, Plaintiff was not provided with:

   (a) any specific factual basis for any allegation;

   (b) any identification of the complaining party, the incident, or any date or location of the alleged misconduct;

   (c) any opportunity to respond; or

   (d) any pre-deprivation hearing of any kind.

31. The procedural protections required by *Loudermill* were entirely absent.

**E. The December 10, 2025, Notice and December 17, 2025, Board Ratification**

32. On December 10, 2025, Plaintiff sent a written email directly to the Board of Education. In that email, Plaintiff:

   (a) Set forth, in writing, her account of the October 2025 coercion meeting, including the statements made by Defendant Johnson and the presence of Dr. Threat;

   (b) Stated her belief that her administrative leave was retaliatory;

   (c) Explicitly identified the "I'll deal with you later" statement; and

   (d) Notified the Board that she had received no specific allegations, no opportunity to respond, and no contact from any investigator.

33. On December 17, 2025, Defendant Carter, then Board President, responded by email on the Board's behalf. Defendant Carter's response acknowledged, in writing, that:

   (a) the District had not provided Plaintiff with the specifics of the allegations;

   (b) Plaintiff would be afforded an opportunity to present "any alleged defenses" only "should the discipline process progress," that is, post-deprivation rather than pre-deprivation; and

   (c) the Board considered the matter to be proceeding consistent with District practice.

34. The December 17, 2025, email is a written admission by the President of the Board, on the Board's behalf, that the District's procedural posture was the inverse of what *Loudermill* requires. It is also documentary ratification by the Board of Defendant Johnson's

unconstitutional conduct after the Board had been placed on actual notice of Plaintiff's retaliation theory.

35.     Defendants Carter, Macklin, Akins, and Boyington each received Plaintiff's December 10, 2025, email. Each thereafter failed to intervene, to investigate, or to correct the constitutional violations of which they had been placed on actual notice. Each thereby personally ratified Defendant Johnson's conduct and is individually liable under 42 U.S.C. § 1983 for deliberate indifference to known constitutional violations.

**F.  The Investigation and the Misattributed-Discipline Admission**

36.     The District retained an outside investigator, through an educational service center, to conduct an investigation. Plaintiff was not contacted by the investigator until on or about January 15, 2026, more than ten (10) weeks after she was placed on leave. Plaintiff was interviewed once, on or about January 20–21, 2026. Plaintiff was never interviewed again.

37.     Throughout the investigation, the District never provided Plaintiff with:

> (a) any written witness statement;

> (b) the identity of any complaining party;

> (c) any specific incident, student, or date of alleged misconduct; or

> (d) any documentary evidence of any kind purporting to support any allegation against her.

38.     On information and belief, during the investigation, counsel for the District communicated with Plaintiff's then-counsel concerning the basis for the disciplinary allegations. On information and belief, in the course of those communications, counsel for the District acknowledged that the disciplinary records initially proffered as the basis for potential adverse action were not records of discipline that had been administered by Plaintiff. On information and belief, when challenged to produce data substantiating the claim that Plaintiff had administered discipline in a racially discriminatory manner, counsel for the District produced data that did not support the allegation; counsel then pivoted to allegations of "data scrubbing" without identifying any specific data Plaintiff was alleged to have altered or omitted.

### G. The April 23, 2026, Clearance

39.    On April 23, 2026, the District, through Defendant Evans as Interim Superintendent, issued a written letter to Plaintiff stating that, after an investigation involving interviews of more than twenty (20) individuals over multiple months, "insufficient evidence exists to support a finding of misconduct and no discipline will be issued." Plaintiff's administrative leave ended on or about April 28, 2026.

40.    The April 23, 2026, letter is dispositive of the falsity of the allegations the District had communicated to more than twenty third parties during the preceding six months. The District has not, however, provided Plaintiff with a name-clearing hearing, issued any affirmative public correction, communicated the clearance to the persons who received the allegations, or remediated Plaintiff's personnel file.

### H. Electronic Surveillance – On Information and Belief

41.    On information and belief, Defendant Johnson directed the District's information technology personnel to access Plaintiff's District-issued email account without her authorization during the period of her administrative leave and the active investigation of the allegations against her.

42.    Documentary confirmation has been obtained in the concurrent matter of Dr. JaTina N. Threat, the District's own Human Resources Director, that Defendant Johnson directed the District's IT Director to access Dr. Threat's District email account during the period of Dr. Threat's administrative leave. The same pattern of conduct that has been confirmed as to Dr. Threat is reasonably alleged as to Plaintiff on information and belief, given the documented institutional pattern and the temporal overlap of the investigations.

43.    Plaintiff reserves the right to amend this Complaint upon discovery of the full scope of any electronic account access.

### I. The Continuing Violation

44.    Since April 23, 2026, the District and its current Board, which includes the holdover Defendants Carter, Akins, and Boyington, together with new Members Callender and

Morton, has continued the constitutional violation by failing to provide any post-clearance remediation. The District has refused to:

    (a) provide Plaintiff with a name-clearing hearing;

    (b) issue an affirmative public correction;

    (c) communicate the clearance to the persons who received the allegations; or

    (d) remediate Plaintiff's personnel file.

45. The stigma persists to the date of this filing.

## IV.  CAUSES OF ACTION

### COUNT I

### First Amendment Retaliation – 42 U.S.C. § 1983

*(Against Defendants Johnson, Carter, Macklin, Akins, Boyington, and Evans in Their Individual Capacities)*

46. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

47. Plaintiff's refusal in the October 2025 meeting to make false statements against Principal Khalisha A. Lewis was speech protected by the First Amendment. Plaintiff's refusal addressed matters of public concern, including the integrity of public-school administrative leadership and the propriety of District processes used to investigate and discipline administrators.

48. Plaintiff's refusal was further protected as a refusal to engage in compelled false speech. The First Amendment protects not only the right to speak freely but also the right to refrain from speaking falsely at the demand of a government employer.

49. Plaintiff's refusal was not made pursuant to her ordinary job duties as an Assistant Principal. The fabrication of allegations against a fellow administrator is not, and could not lawfully be, part of the duties of any public-school administrator.

50. Defendant Johnson took direct adverse action against Plaintiff by placing her on administrative leave on October 31, 2025, in retaliation for Plaintiff's protected refusal. The temporal proximity between Plaintiff's refusal and the adverse action, approximately

five (5) weeks, together with Defendant Johnson's express threat ("I'll deal with you later"), establishes a direct causal connection.

51. Defendants Carter, Macklin, Akins, and Boyington personally ratified, perpetuated, and prolonged the retaliatory adverse action by their failure to intervene after receiving Plaintiff's December 10, 2025, written notice of the retaliation theory. Defendant Evans further perpetuated the retaliation by continuing Plaintiff's administrative leave through April 28, 2026, and by failing to provide post-clearance remediation.

52. Defendants' retaliatory conduct would deter a person of ordinary firmness from engaging in protected speech.

53. Defendants acted with deliberate indifference to, and reckless disregard for, Plaintiff's clearly established First Amendment rights. No reasonable official could have believed that imposing six (6) months of administrative leave on an administrator for refusing to fabricate allegations against a colleague was lawful.

54. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered the damages described in Section V below. Plaintiff is entitled to compensatory damages, punitive damages against each individual Defendant, declaratory and injunctive relief, and attorney's fees and costs under 42 U.S.C. § 1988.

## COUNT II

### Procedural Due Process – Fourteenth Amendment / 42 U.S.C. § 1983

*(Against All Defendants)*

55. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

56. At all relevant times, Plaintiff held a constitutionally protected property interest in her continued employment under her then-operative multi-year certificated administrative contract, Ohio Revised Code § 3319.02, and *Loudermill*, 470 U.S. 532 (1985).

57. The Fourteenth Amendment's Due Process Clause requires that, before a public employer deprives an employee of a protected property interest, the employee must receive notice of

the charges, an explanation of the employer's evidence, and an opportunity to respond before the adverse action is imposed.

58.     Defendant Johnson, acting under color of state law and as the District's final policymaker on personnel matters, placed Plaintiff on six (6) months of administrative leave without providing any specific notice of the allegations, any explanation of the evidence, or any pre-deprivation opportunity to respond. Defendant Johnson's decision constitutes the official act of the District.

59.     The deprivation Plaintiff suffered was not limited to financial harm. Defendant Johnson required Plaintiff to surrender her keys, identification, and electronic-access fob; barred Plaintiff from District property; barred Plaintiff from contact with District students, parents, and staff; removed Plaintiff from her position as Assistant Principal of Bedford High School; and foreclosed Plaintiff from her professional duties and community for approximately one hundred and eighty (180) days. These deprivations constitute a deprivation of Plaintiff's protected property interest within the meaning of *Loudermill* and require pre-deprivation process.

60.     On December 17, 2025, Defendant Carter, on behalf of the Board, confirmed in writing that Plaintiff would receive an opportunity to respond only "should the discipline process progress," that is, after, rather than before, the deprivation. This is the inverse of the procedure *Loudermill* requires.

61.     Defendants Carter, Macklin, Akins, and Boyington personally received Plaintiff's December 10, 2025, notice of the procedural deficiencies and failed to remedy them. Defendant Macklin in particular received the original October 31, 2025, leave letter as a designated Board recipient and failed to intervene then or thereafter.

62.     Defendant Evans, upon assuming the role of Interim Superintendent, became responsible for the District's ongoing personnel processes affecting Plaintiff and continued the deprivation through April 28, 2026.

63.     Defendants Callender and Morton, upon assuming their seats on the Board, became responsible for and ratified the District's ongoing failure to provide post-deprivation

remediation, including the failure to provide a name-clearing hearing, an affirmative public correction, or remediation of Plaintiff's personnel file.

64. The Bedford City School District is liable under *Monell*, 436 U.S. 658 (1978), because the constitutional violation resulted from (a) the deliberate decision of Defendant Johnson as the District's final policymaker on personnel matters; (b) the ratification of that decision by the Board through Defendant Carter's December 17, 2025, written response; and (c) a well-settled custom of constitutional deprivation documented across the parallel Lewis, Walker, and Threat matters.

65. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered the damages described in Section V below. Plaintiff is entitled to compensatory damages, punitive damages against the individual Defendants, declaratory and injunctive relief, and attorney's fees and costs under 42 U.S.C. § 1988.

## COUNT III
### Liberty Interest Deprivation – Stigma-Plus / 42 U.S.C. § 1983
*(Against All Defendants)*

66. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

67. Plaintiff held a constitutionally protected liberty interest in her good name, reputation, honor, and integrity as a public-school administrator. *Bd. of Regents v. Roth*, 408 U.S. 564 (1972); *Codd v. Velger*, 429 U.S. 624 (1977).

68. Defendants published stigmatizing allegations against Plaintiff that imputed:

    (a) the commission of crimes (intoxication on duty involving controlled substances; mishandling of confiscated controlled substances);

    (b) professional incompetence and misconduct in the performance of her core duties (mishandling of student-disciplinary evidence; disparate and improper handling of student discipline); and

    (c) conduct incompatible with the moral and professional standards of public education.

69. The stigmatizing allegations published by Defendants, including allegations that Plaintiff was under the influence of drugs or alcohol on duty, that Plaintiff mishandled confiscated controlled substances, and that Plaintiff administered student discipline in a racially discriminatory manner, were and at all relevant times have been false. The District's own April 23, 2026, letter confirms, after a multi-month investigation involving interviews of more than twenty individuals, that "insufficient evidence exists to support a finding of misconduct." Plaintiff did not engage in the conduct alleged. Plaintiff affirmatively challenges the substantial truth of each stigmatizing allegation. *Codd v. Velger*, 429 U.S. 624, 627–28 (1977).

70. Defendants published these allegations beyond the District's internal personnel function. The District's own commissioned investigation involved interviews of more than twenty (20) individuals over multiple months, thereby disseminating the stigmatizing allegations to a wide circle of community members, fellow employees, parents, and other third parties.

71. Defendants combined the stigmatizing allegations with a material alteration of Plaintiff's employment status, the approximate 180-day removal from her position, thereby triggering the "stigma-plus" framework that requires a name-clearing hearing.

72. Defendants have provided no name-clearing hearing, no public retraction, no affirmative correction, no communication of the April 23, 2026, clearance to those who received the allegations, and no remediation of Plaintiff's personnel file. The stigma persists to the date of this filing.

73. The District's internal investigation did not constitute a name-clearing hearing within the meaning of *Codd v. Velger*, 429 U.S. 624 (1977), and *Bd. of Regents v. Roth*, 408 U.S. 564 (1972). Plaintiff was not provided with specific charges, was not afforded an adversarial opportunity to confront the evidence or witnesses against her, and the investigation's ultimate conclusion was not communicated to the third parties who received the stigmatizing allegations. The constitutional requirement of an "opportunity to clear [her] name" remains unsatisfied.

74. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered the damages described in Section V below. Plaintiff is entitled to compensatory damages, punitive

damages against the individual Defendants, declaratory and injunctive relief (including an order directing Defendants to provide a name-clearing hearing or equivalent affirmative public correction), and attorney's fees and costs under 42 U.S.C. § 1988.

## COUNT IV

### Monell Municipal Liability – 42 U.S.C. § 1983

*(Against the Bedford City School District and the Board Defendants in Their Individual Capacities)*

75. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

76. Municipal liability under 42 U.S.C. § 1983 attaches when a plaintiff demonstrates that a constitutional violation resulted from (1) an official policy or custom of the municipality; (2) a decision by a person with final policymaking authority; (3) ratification of unconstitutional conduct by a final policymaker; or (4) deliberate indifference to a known pattern of constitutional violations. *Monell*, 436 U.S. 658 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986); *City of Canton v. Harris*, 489 U.S. 378 (1989).

77. Consistent with *Pembaur*, 475 U.S. at 480–84, a deliberate decision by an official with final policymaking authority on a single occasion is sufficient to establish municipal policy. Defendant Johnson's October 31, 2025, decision to place Plaintiff on administrative leave, taken in her capacity as Superintendent with delegated authority over administrator personnel actions pending Board review, constitutes such a decision.

78. **Ratification.** After being placed on actual notice of Plaintiff's retaliation theory and the procedural deficiencies of her leave through Plaintiff's December 10, 2025, email, Defendant Carter, then Board President, ratified Defendant Johnson's conduct in writing on December 17, 2025. Defendants Macklin, Akins, and Boyington further ratified the conduct by failing to take any corrective action after receiving the same notice.

79. **Custom and Pattern.** The District has maintained a custom and practice of: (a) placing senior administrators on extended administrative leave without pre-deprivation process; (b) initiating investigations without identifying specific allegations to the affected administrator; (c) denying *Loudermill* hearings; and (d) retaliating against administrators who refuse to participate in or who voice concerns about the Superintendent's preferred

personnel narratives. This custom is documented across the parallel Lewis, Walker, and Threat matters, each independently represented by counsel and subject to pre-litigation civil rights claims arising from materially similar conduct, and is established on the District's own records and institutional history.

80. **Failure to Train and Supervise.** The District has failed adequately to train and supervise its Superintendent, Board, and personnel staff regarding the procedural requirements of the Fourteenth Amendment, *Loudermill*, and the protection of public-employee speech under the First Amendment. Given the duties assigned to the Superintendent and Board Members—including the routine administration of personnel investigations, the imposition of administrative leaves, and the disposition of administrator misconduct allegations—the need for training on the pre-deprivation procedural requirements of *Loudermill* and on the First Amendment limits on retaliatory personnel action was so obvious, and the inadequacy of any such training was so likely to result in constitutional violations, that the District's policymakers were deliberately indifferent to the need. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). Alternatively, the District was on actual notice of the need for additional training by virtue of a pattern of constitutional violations involving the same conduct, established by the parallel Lewis, Walker, and Threat matters. *Id.* at 397 (O'Connor, J., concurring in part). The identified training deficiencies were closely related to and a direct cause of Plaintiff's constitutional injuries.

81. Each Board Defendant, individually, bears § 1983 liability for deliberate indifference in the face of documented, ongoing, and escalating constitutional deprivations. The Board's failure to intervene over a sustained six-month period, in the face of the Lewis, Walker, Gowing, and Threat matters, constitutes tacit authorization of Defendant Johnson's conduct.

82. As a direct and proximate result of the District's policies, customs, ratification, and failure to train and supervise, Plaintiff has suffered the damages described in Section V below. Plaintiff is entitled to compensatory damages, punitive damages against each individual Board Defendant, declaratory and injunctive relief, and attorney's fees and costs under 42 U.S.C. § 1988.

## COUNT V

### Supervisory Liability – 42 U.S.C. § 1983

*(Against Defendants Carter, Macklin, Akins, Boyington, Callender, Morton, and Evans in Their Individual Capacities)*

83. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

84. Defendants Carter, Macklin, Akins, Boyington, Callender, Morton, and Evans occupied positions of supervisory authority over the personnel processes that produced the constitutional violations alleged in Counts I, II, and III.

85. **Deprivation-Phase Liability.** Defendants Carter, Macklin, Akins, and Boyington personally received Plaintiff's December 10, 2025, notice of the constitutional violations, and, in the case of Defendant Macklin, received the original October 31, 2025, leave letter as a designated Board recipient. With actual knowledge of Plaintiff's retaliation theory and of the procedural deficiencies of her leave, each failed to remedy, intervene to halt, or correct the ongoing constitutional violations.

86. **Continuing-Violation Liability.** Defendants Callender and Morton, upon assuming their seats on the Board, became responsible for the District's ongoing personnel processes affecting Plaintiff. With actual or constructive knowledge of the constitutional injuries Plaintiff continued to suffer, Defendants Callender and Morton failed to provide any post-clearance remediation, including the failure to provide a name-clearing hearing, an affirmative public correction, communication of the clearance to those who received the allegations, or remediation of Plaintiff's personnel file.

87. Defendant Evans, upon assuming the role of Interim Superintendent, had actual or constructive knowledge of the constitutional violations alleged herein. Defendant Evans continued the deprivation through April 28, 2026, and, since the April 23, 2026, clearance, has failed to provide Plaintiff any post-deprivation remedy adequate to cure the constitutional injury.

88. As a direct and proximate result of the supervisory failures of these Defendants, Plaintiff has suffered the damages described in Section V below. Plaintiff is entitled to

compensatory damages, punitive damages against each individual Defendant, declaratory and injunctive relief, and attorney's fees and costs under 42 U.S.C. § 1988.

## COUNT VI

### Defamation Per Se – Ohio Common Law

*(Against Defendant Johnson, the Board Defendants, and Defendant Evans in Their Individual Capacities)*

89. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

90. Defendants published false statements of fact concerning Plaintiff, including but not limited to:

   (a) that Plaintiff was, or was credibly suspected to be, under the influence of drugs or alcohol on school grounds and/or at school functions;

   (b) that Plaintiff had improperly handled confiscated controlled substances;

   (c) that Plaintiff had improperly or disparately administered student discipline; and

   (d) on information and belief, that Plaintiff had administered student discipline in a racially discriminatory manner.

91. These statements impute to Plaintiff (a) the commission of criminal offenses; (b) conduct incompatible with the proper exercise of her professional duties as an administrator; and (c) conduct injurious to her trade and profession. Each statement is therefore defamatory per se under Ohio law.

92. Defendants caused these statements to be published to third parties through:

   (a) the October 31, 2025, leave letter, with its stated distribution to the Treasurer and Board officers;

   (b) the multi-month investigation involving interviews of more than twenty (20) individuals; and

   (c) communication of the allegations to the District's agents acting beyond the scope of any privilege.

93.     The statements were false. The District's own April 23, 2026, letter confirms that, after a multi-month investigation, "insufficient evidence exists to support a finding of misconduct." On information and belief, the disciplinary records initially proffered as the basis for the allegations were not records of discipline that had been administered by Plaintiff.

94.     Defendants acted with actual malice or, at minimum, with reckless disregard for the truth or falsity of the statements. Defendant Johnson's express threat "I'll deal with you later," made five (5) weeks before the leave, together with the substantial symmetry between the allegations Defendant Johnson sought to manufacture against Principal Lewis and the allegations later asserted against Plaintiff, establishes actual malice.

95.     The individual Defendants acted with malicious purpose, in bad faith, and in a wanton and reckless manner within the meaning of Ohio Revised Code § 2744.03(A)(6)(b), thereby losing any statutory immunity that might otherwise attach to a political-subdivision employee.

96.     As a direct and proximate result of Defendants' defamation, Plaintiff has suffered presumed damages and the actual damages described in Section V below. Plaintiff is entitled to compensatory damages, punitive damages, and such other relief as the Court deems appropriate.

**COUNT VII**

**Stored Communications Act – 18 U.S.C. § 2701 et seq.**

*(On Information and Belief Against the Bedford City School District and Defendant Johnson)*

97.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

98.     On information and belief and based on the District's documented pattern of unauthorized electronic account access, confirmed in the concurrent matter of Dr. JaTina N. Threat, Defendant Johnson directed the District's IT personnel to access Plaintiff's District-issued email account without her authorization during the period of her administrative leave.

99.  The Stored Communications Act, 18 U.S.C. § 2701 et seq., prohibits the intentional, unauthorized access to stored electronic communications. Civil liability under 18 U.S.C. § 2707 includes actual damages, punitive damages, and attorney's fees.

100.  Plaintiff has made, or will promptly make, written demand on the District for confirmation of whether her electronic accounts were accessed during her leave. Plaintiff reserves the right to amend this count upon discovery of the full scope of any such access.

101.  As a direct and proximate result of Defendants' unauthorized access, Plaintiff has suffered injury to her privacy interests and such other damages as may be proven at trial. Plaintiff is entitled to actual damages, punitive damages, and attorney's fees and costs under 18 U.S.C. § 2707.

## COUNT VIII

### Breach of Employment Contract

*(Against the Bedford City School District)*

102.  Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

103.  At all relevant times during the deprivation alleged herein, Plaintiff was employed by the District pursuant to a then-operative multi-year certificated administrative contract that established the terms and conditions of her employment, including all applicable procedural protections.

104.  The District breached its contractual obligations to Plaintiff by:

(a) placing her on administrative leave without the notice and procedural protections required under her employment contract, District policies, and applicable Ohio law incorporated into the contract;

(b) communicating false and stigmatizing allegations about Plaintiff in a manner inconsistent with the District's express contractual obligation to administer personnel processes in accordance with applicable Ohio law and District policies, which the contract incorporates by reference; and

(c) failing to restore Plaintiff's personnel file to a condition accurately reflecting the April 23, 2026, clearance.

105. Ohio Revised Code § 2744.09(B) expressly exempts contract actions from political-subdivision immunity.

106. As a direct and proximate result of the District's breach, Plaintiff has suffered economic and reputational damages in amounts to be proven at trial.

## V. DAMAGES

107. As a direct and proximate result of Defendants' actions described herein, Plaintiff has suffered and continues to suffer the following damages:

(a) Reputational injury and professional stigma resulting from Defendants' publication of unsubstantiated and defamatory allegations to more than twenty (20) third parties over a six-month period;

(b) Emotional distress, anxiety, and dignitary harm caused by the deliberate, sustained, and public nature of Defendants' conduct, including the imposition of six (6) months of administrative leave on allegations the District ultimately could not substantiate;

(c) Impairment of Plaintiff's professional standing and reputation within the Northeast Ohio educational administrative community, in which Plaintiff holds licensure and has built her career, including diminished competitiveness for promotion to principal or central-office positions and loss of professional advancement opportunities during and after the six-month removal;

(d) Loss of professional development opportunities, and deferred career milestones, forgone during the leave period;

(e) Violation of constitutional rights under the First and Fourteenth Amendments and 42 U.S.C. § 1983, entitling Plaintiff to compensatory and punitive damages;

(f) Attorney's fees and costs pursuant to 42 U.S.C. § 1988, 18 U.S.C. § 2707, and other applicable fee-shifting authority; and

(g) Such other damages as shall be proven at trial.

108. Punitive damages are independently warranted against Defendant Johnson in her individual capacity, and against each individual Board Defendant in their individual capacities, for their knowing, deliberate, and reckless disregard of Plaintiff's clearly established constitutional rights. Defendant Johnson personally directed the coercive October 2025 meeting, personally signed the October 31, 2025, leave letter, and personally threatened Plaintiff ("I'll deal with you later"). The Board Defendants personally received notice of the constitutional violations and personally failed to intervene over a sustained period in the face of a documented and ongoing pattern.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Claire B. Gowing respectfully requests that this Court enter judgment in her favor and against all Defendants, and award the following relief:

a. A declaration that Defendants violated Plaintiff's rights under the First Amendment, the Fourteenth Amendment's Due Process Clause, 42 U.S.C. § 1983, the Stored Communications Act, and Ohio common law;

b. Compensatory damages for reputational injury, emotional distress, lost professional opportunity, interference with career advancement, and all other actual damages sustained.

c. Punitive damages against Defendant Johnson in her individual capacity, against Defendant Evans in his individual capacity, and against each individual Board Defendant in their individual capacities, for their knowing, deliberate, and reckless disregard of Plaintiff's clearly established constitutional rights;

d. An order directing the immediate and complete expungement of all references to the October 2025 - April 2026 administrative leave and investigation from Plaintiff's personnel file other than the April 23, 2026, clearance letter;

e. An order directing the District to transmit a written correction and clearance to all persons and entities who received communications concerning the allegations against Plaintiff;

f.  A constitutionally adequate name-clearing hearing, if not mooted by other relief granted;

g.  An order directing Defendants not to report the investigation or leave to the Ohio Department of Education, any licensure body, or any prospective employer;

h.  Attorney's fees and costs under 42 U.S.C. § 1988, 18 U.S.C. § 2707, and any other applicable fee-shifting authority;

i.  Pre-judgment and post-judgment interest as permitted by law; and

j.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff Claire B. Gowing hereby demands a trial by jury on all claims so triable.

Respectfully submitted,

Karrie D. Howard, Esq.
HOWARD LEGAL SERVICES LLC
1414 South Green Road, Suite 203
South Euclid, Ohio 44121
Cell: (330) 774-9198
Office: (216) 644-9076
khoward@howardlegalservices.com

*Counsel for Plaintiff Claire B. Gowing*